*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 25-CV-0086 & 25-CV-0229[1]

QUINN, RACUSIN & GAZZOLA CHARTERED, APPELLANT,

V.

PAVICH LAW GROUP, P.C., *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-004580-B)

(Neal E. Kravitz, *Judge*)

(Argued February 25, 2026                    Decided August 6, 2026)

*Robert N. Kelly*, with whom *Tara A. Barnes* was on the brief, for appellant Quinn, Racusin & Gazzola Chartered.

*Eric C. Rowe*, with whom *C. Allen Foster* and *Masten Childers, III* were on the brief, for appellee Whiteford, Taylor & Preston, LLP,

*William P. McGrath, Jr.*, for appellee Kalbian Hagerty, LLP,

*Stuart A. Berman* for appellee Pavich Law Group, and

---

[1] This court sua sponte consolidated the appeal of the Superior Court's order denying appellant's petition for judicial review and vacatur of the final award and granting appellees' joint opposition and cross-motion to confirm the final arbitration award, No. 25-CV-0086, with the appeal of the court's entry of final judgment, No. 25-CV-0229.

*Joe R. Reeder* for appellee Wye Oak Technology, Inc.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and SHANKER, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: In this appeal, four law firms[2] that jointly represented appellee Wye Oak Technology, Inc. (Wye Oak) dispute the arbitrator's allocation of their contingency attorneys' fees and the scope of the arbitrator's authority. In anticipation of the deadline to petition for attorneys' fees in a civil action in federal district court (Iraq Litigation), the Law Firms executed an Agreement Concerning Attorneys' Fees (ACAF), in which they agreed that Wye Oak would pay the Law Firms a cumulative contingency fee of forty-six percent of its damages award from the Iraq Litigation. The ACAF included an arbitration clause. QRG did not seek attorney's fees in arbitration because it believed that its share of the award was supposed to be the subject of future negotiation and was awarded zero percent of the attorneys' fees by the arbitrator. QRG asks us to reverse the Superior Court's order confirming the arbitrator's final award and denying QRG's motion for vacatur of the final award.

---

[2] The four law firms involved in this appeal are: (1) appellant Quinn, Racusin & Gazzola Chartered (QRG); (2) appellee Pavich Law Group (PLG); (3) appellee Whiteford, Taylor & Preston (WTP); and (4) appellee Kalbian Hagerty (KH).

QRG argues that the court erred in rejecting its argument that "[t]here was no agreement to arbitrate" because the ACAF was the product of fraudulent inducement and duress.[3] Additionally, QRG contends that the "arbitrator exceeded the arbitrator's powers" based on the scope of the ACAF's arbitration clause.[4] For the reasons discussed below, we conclude that the court correctly determined that QRG failed to establish fraudulent inducement or duress and that the arbitrator acted within the scope of the ACAF's arbitration clause. We affirm the judgment of the Superior Court confirming the arbitration award.

## I.      Factual and Procedural Background

This appeal arose out of litigation in federal district court. The federal district court entered a judgment in excess of $120,000,000 in favor of Wye Oak against the Republic of Iraq and its Ministry of Defense on Wye Oak's claim that Iraq had breached a contract for Wye Oak to refurbish and supply military equipment to the Iraqi military.

The judgment was issued on November 15, 2019. QRG alleges—and PLG and WTP dispute—that, five months earlier, without the knowledge of QRG and KH, Robert Pavich from PLG met privately with Allen Foster and Erik Bolog from

---

[3] Revised Uniform Arbitration Act (RUAA), D.C. Code § 16-4423(a)(5).
[4] *Id.* § 16-4423(a)(4).

WTP and agreed to seek an increase to their percentage shares of Wye Oak's damages award. According to QRG, Mr. Pavich and Mr. Foster agreed to split Wye Oak's forty-six percent contingency fee award so that PLG would receive twenty-one percent, and WTP would receive twenty-five percent, leaving nothing for QRG and KH (the July 2019 agreement).

After the federal district court entered judgment in favor of Wye Oak in the Iraq Litigation, it directed Wye Oak to petition for its attorneys' fees by December 2, 2019. During a November 29, 2019, conference call, the Law Firms discussed how to respond to the pending deadline to petition for attorneys' fees in the Iraq Litigation. That same day, at a Wye Oak board meeting, the Law Firms presented their proposal to Wye Oak's board that Wye Oak would pay a cumulative contingency fee of forty-six percent, while reserving the specific allocation of the forty-six percent among the Law Firms "to be determined at a later time." Wye Oak's board approved the proposal.

QRG alleges that, on December 2, 2019, the day of the deadline for Wye Oak to file its attorneys' fees petition, Mr. Foster on behalf of WTP contacted QRG and requested a written contract memorializing the November 29, 2019, agreement. PLG, QRG, and WTP representatives met that same day at QRG's office building to finalize the ACAF, which set forth the November 29, 2019, agreement. At this

point, QRG alleges that Mr. Foster demanded that the ACAF include an arbitration clause. QRG claims that Mr. Foster also said that if QRG did not agree to adding a JAMS[5] arbitration clause, then not only would WTP refuse to sign the ACAF, but Mr. Foster would "crush" QRG and demand at least thirty percent of Wye Oak's forty-six percent contingency fee. QRG contends that it "acquiesced" to Mr. Foster's "threat" only to protect Wye Oak's interests under the pressure of the imminent deadline.

The Law Firms executed the ACAF on December 2nd. The ACAF acknowledges that "the existing fee agreements, as contemplated by the parties, for the distribution of fees to compensate attorneys do not accurately or equitably reflect the contributions of time, expenses, and other resources" used by the Law Firms in the Iraq Litigation. Under paragraph one of the ACAF, forty-six percent of Wye Oak's damages award in the Iraq Litigation is reserved for the Law Firms' contingency fees:

> 1. Wye Oak will pay to the Law Firms a total contingency fee of 46 percent of all gross amounts actually recovered and value received by Wye Oak, including from collection or settlement or transfer of any interest in the claims or recovery thereon, from any source, from or on behalf of Iraq arising out of or relating to Wye Oaks's claims against Iraq or the Litigation. After computation of that fee, Wye

---

[5] JAMS is the private arbitration company operating in the District, which was previously known as the "Judicial Arbitration Management Services."

Oak will reimburse the Law Firms, from Wye Oak's share of the recovery, for all costs and expenses reasonably incurred by the Law Firms in their representation of Wye Oak.

Paragraph two of the ACAF imposes a fiduciary duty on QRG and WTP to supervise the appellate advocacy and judgment collection efforts on behalf of Wye Oak. Specifically, it provides:

2. WTP and QRG mutually agree to cooperatively supervise the appellate advocacy and judgment collection efforts on behalf of Wye Oak. Wye Oak agrees to compensate each firm, out of the ultimate recovery, at three times (3x) the current hourly rate for services provided under this Paragraph 2 [WTP: Foster, $820; Bolog, $820; Rowe, $725; QRG; Quinn, $795; Klemz, $495; McClain, $340]. WTP and QRG agree to provide Wye Oak with quarterly billing statements showing the fees and costs accrued in supervising collection and appeal on Wye Oak's behalf. Both firms shall also petition the Court, when appropriate, for any fees and costs incurred by Wye Oak outside the scope of the contingency fee agreement set forth in Paragraph 1 herein.

Paragraph three of the ACAF discusses arbitration. Specifically, it says:

3. Any claim or dispute between any of the aforementioned parties arising out of or relating to this Agreement, the services to be performed under it, including any fee owed to any party, will be resolved by arbitration in the District of Columbia. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on any award may be entered in any court of competent jurisdiction.

QRG served as Wye Oak's long-time counsel and one of its partners, John H.

Quinn, also sits on Wye Oak's board of directors. PLG and WTP initiated arbitration to determine the Law Firms' respective shares of Wye Oak's contingency fee award under the ACAF after QRG allegedly advised Wye Oak not to pay any amounts to the Law Firms pursuant to the ACAF.

PLG and WTP also asserted tort claims against QRG before the arbitrator. Specifically, WTP and PLG asserted that QRG breached its duty of care in supervising the appellate advocacy and judgment collection efforts on behalf of Wye Oak and alleged tortious interference based on QRG's attempts to reduce WTP's and PLG's portions of Wye Oak's contingency fee award. PLG further asserted that QRG owed a fiduciary duty to PLG because PLG was a creditor of Wye Oak, Wye Oak was insolvent, and QRG breached its duty because it failed to pursue monetization of the judgment and promptly pursue collection efforts. WTP and PLG further asserted that the delay caused by QRG in collecting the monetized judgment resulted in tortious interference with their contracts and relationships with Wye Oak. PLG also claimed that QRG's actions placed PLG in a less favorable position by seeking to reduce PLG's percentage of the contingency fee recovery.

The arbitrator's interim award allocated Wye Oak's contingency fee award between the Law Firms as follows: PLG, 18 percent; WTP, 27.5 percent; KH, 0.5 percent; and QRG, 0 percent. A panel of this court affirmed the Superior Court's

decision to confirm the arbitrator's interim award. *Quinn, Racusin & Gazzola Chartered v. PLG L. Grp., P.C.*, 309 A.3d 587, 589-91 (D.C. 2024). The division nevertheless remanded for the court to decide whether to confirm the arbitrator's final award order. *Id.*

Following remand, the arbitrator, Judge Richard A. Levie (Ret.), entered a final award that was identical to the interim award. QRG filed a motion for judicial review and vacatur of the final award, and appellees filed a joint opposition and cross-motion to confirm the final award. In its motion, QRG argued that the arbitrator's final award should be vacated because: (1) the ACAF is invalid because it was the result of fraudulent inducement and duress, and (2) the arbitrator decided the contingency fee dispute and PLG's and WTP's breach of fiduciary duty and tort claims, which were outside the scope of the ACAF's arbitration clause.[6]

As to QRG's first argument, regarding the validity of the ACAF's arbitration clause on the grounds of fraudulent inducement and duress, QRG contended that the alleged July 2019 agreement between PLG and WTP was a material fact that was concealed to its detriment. Additionally, QRG claimed, as part of this first argument, that after Wye Oak's board approved the ACAF in principle Mr. Foster threatened

---

[6] QRG additionally argued that "the arbitrator demonstrated a manifest disregard for the law," but on appeal it does not make any claim of error regarding the court's rejection of this claim.

that, unless an arbitration clause was included, PLG would not sign the ACAF, crush QRG, and demand a thirty-percent share of Wye Oak's contingency fee award. As to QRG's second argument concerning the scope of the arbitrator's jurisdiction under the ACAF, QRG asserted that the arbitrator exceeded the scope of its authority by issuing a ruling resolving issues relating to the parties' conduct, such as PLG's claim that QRG attempted to have them terminated or alter their fee arrangement with Wye Oak, which occurred prior to execution of the ACAF in 2019. QRG further claimed that the arbitrator exceeded his authority because the fee allocation was not within the scope of the arbitration clause.

In their opposition and cross-motion to confirm the final award, appellee Law Firms disputed that any July 2019 agreement was entered into. They further asserted that, even if such an agreement had been made, doing so was not wrongful or fraudulent because it occurred before the ACAF was executed and therefore would not be binding in arbitration. Appellees argued that QRG's claims of fraud or duress were belied by QRG's willingness to submit to arbitration with PLG as early as November 19, 2019, a month before the ACAF was signed, in a draft agreement prepared by QRG.[7] Appellees further argued that the Superior Court lacked

---

[7] On November 19, 2019, QRG drafted an agreement on an unrelated issue between QRG and PLG, which included an arbitration clause.

jurisdiction to determine the scope of the ACAF because the parties delegated the authority to decide questions of arbitrability to the arbitrator.

In its order, the court first determined that the arbitrator had correctly decided that it had jurisdiction over the parties' contingency fee dispute.[8] Quoting *George Washington Univ. v. Scott*, 711 A.2d 1257, 1259 (D.C. 1998), the court acknowledged the presumption of arbitrability "where the contract contains an arbitration clause, . . . in the sense that an order to arbitrate the particular grievance should not be denied unless . . . the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." The court concluded that "the ACAF is certainly 'susceptible of an interpretation' that 'any claim or dispute' 'relating to' the agreement (and especially relating to fees owed the claimants) encompasses PLG's and WTP's affirmative claims against QRG." The court elaborated that, even though WTP's and PLG's claims of fraudulent misrepresentation and tortious

---

[8] The court's order also noted a development in the Iraq Litigation's procedural history. Specifically, after this case was remanded but before the filing of the notice of appeal in this case, Wye Oak's judgment was vacated on jurisdictional grounds by the United States Court of Appeals for the D.C. Circuit in *Wye Oak Tech., Inc. v. Republic of Iraq*, 109 F.4th 509, 511 (D.C. Cir. 2024). The trial court provided that, "absent a reversal from the United States Supreme Court, therefore, Iraq has prevailed against Wye Oak on the merits of Wye Oak's lawsuit and Wye Oak is not entitled to recover its attorney's fees, rendering moot the parties' contingency fee dispute." The Supreme Court subsequently declined to grant Wye Oak's petition for a writ of certiorari. *Wye Oak Tech., Inc. v. Republic of Iraq*, 146 S. Ct. 396 (2025).

interference were based on alleged actions by QRG that "predate[d] the execution of the ACAF, . . . the claims undoubtedly 'relat[ed] to' the ACAF in that the ACAF addressed the law firms' fee-splitting relationship with Wye Oak and the amount of compensation to which the firms [we]re entitled based on their work on the [Iraq] Litigation."

The court also concluded that QRG had not "presented legally sufficient evidence that QRG's agreement to the JAMS arbitration clause in the ACAF was the result of either fraud or duress." The court reasoned that "'a challenge to the making of the arbitration clause itself is properly resolved by court, while a challenge to the validity of the contract as a whole is for the arbitrator,' *Bank of Am., N.A. v. District of Columbia*, 80 A.3d 650, 663 (D.C. 2013)," and "'a claim of fraudulent inducement, therefore, must be specifically aimed at the arbitration agreement,' *Hercules* [*& Co., Ltd. v. Shama Rest. Corp.*], 613 A.2d [916,] 924 [(D.C. 1992)]." Accordingly, the court concluded that:

> QRG's claim of fraudulent inducement by virtue of the 'secret side agreement [by PLG and WTP in July 2019 to split the contingency fee]' therefore fails under *Hercules* to present a matter for the court to resolve, and the court accordingly need not delve into the arbitrator's findings about who concealed what from whom at the time the parties negotiated the ACAF.

As for QRG's claim of duress, the court next concluded that "no rational fact finder could credit the claim that a threat by Mr. Foster to withdraw WTP from the ACAF instilled the sort of fear in Mr. Quinn that would rise to the level of duress." Accordingly, the court decided that QRG's motion to vacate the award should be denied and that the award should be confirmed pursuant to D.C. Code § 16-4423(e).

This appeal followed.

## II. Discussion

"It is firmly established that judicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden." *C.R. Calderon Constr., Inc. v. Grunley Constr. Co., Inc.*, 257 A.3d 1046, 1058 (D.C. 2021) (citation modified). "Judicial review is not available merely because a party received an unfavorable result." *Id.* (citation modified). Rather, "the burden on a party seeking to set aside the result of an arbitration proceeding remains a formidable one," and the arbitrator's award "may be vacated or modified only on grounds clearly specified by statute." *Celtech, Inc. v. Broumand*, 584 A.2d 1257, 1258-59 (D.C. 1991). In the District of Columbia, the Revised Uniform Arbitration Act (RUAA), D.C. Code § 16-4423, "limits the permissible grounds for vacating an

arbitration award." *Zegeye v. Liss*, 70 A.3d 1208, 1209 (D.C. 2013).[9] Under the RUAA, the Superior Court shall vacate an arbitration award if "an arbitrator exceeded the arbitrator's powers" or "there was no agreement to arbitrate." D.C. Code §§ 16-4423 (a)(4)-(5).

If the court determines that there was an agreement to arbitrate in the ACAF, the court next examines whether the arbitrator exceeded the scope of his authority. *See, e.g.*, *Bank of Am., N.A.*, 80 A.3d at 667 ("If it is determined that the parties had a valid agreement to arbitrate, then we consider next whether the parties' dispute falls within the scope of their agreement.").

### A. Agreement to Arbitrate

QRG first argues in this appeal that, because the ACAF was the product of fraud in the inducement and duress, the award thereunder must be vacated under the RUAA. *See Steiner v. Am. Friends of Lubavitch (Chabad)*, 177 A.3d 1246, 1255 (D.C. 2018) ("[I]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). The trial court's legal conclusions of whether fraudulent inducement or duress occurred affect whether a

---

[9] The parties do not dispute that that the Federal Arbitration Act (FAA), 9 U.S.C. § 10, also may constitute grounds to challenge an arbitration award.

party is bound to arbitrate and therefore are reviewed de novo. *See Univ. of the D.C. Fac. Ass'n/Nat'l Educ. Ass'n v. Bd. of Trs. of Univ. of the D.C.*, 257 A.3d 1026, 1031 (D.C. 2021).

### 1. Fraudulent Inducement

QRG claims that WTP and PLG concealed their intent to use the ACAF's arbitration clause to determine the fee allocation dispute. To establish fraudulent inducement, QRG must show "(1) a false representation (2) in reference to a material fact, (3) with knowledge of its falsity and (4) with the intent to deceive, and that (5) an action was taken in reliance upon the representation." *DCA Capitol Hill LTAC, LLC v. Capitol Hill Grp.*, 332 A.3d 518, 529 (D.C. 2025).[10] Fraud claims that "involve a commercial contract negotiated at arm's length" also require "a sixth element: '(6) that the defrauded party's reliance [was] *reasonable*.'" *Id.* (quoting *Hercules & Co.*, 613 A.2d at 923) (emphasis in original). "It is fundamental that in a business transaction between two sophisticated entities involving substantial sums . . . parties are bound by what they sign." *Id.*

---

[10] We note that there are two standards that can apply in resolving a fraudulent inducement claim, either "clear and convincing" or "preponderance of the evidence," depending on the nature of the claimant's allegations. *See Moore v. Deutsche Bank Nat. Tr. Co.*, 124 A.3d 605, 611 n.9 (D.C. 2015). For the reasons discussed, we conclude that QRG's claim fails under both standards.

Here, QRG has failed to identify any false representation made by WTP or PLG, and so QRG's argument fails on the first element of its fraudulent inducement claim. In its briefing, the closest QRG comes to pointing to an allegedly false representation by any of the appellees is its statement that "[Mr.] Foster had represented to the other parties during the November 29, 2019, call that no written contract was required" to resolve the fee dispute. But that representation, even if false, does not relate to the arbitration clause at all. *See, e.g.*, *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) ("A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen. . . . Although the non-disclosure of material information may constitute fraud when there is a duty to disclose, mere silence does not constitute fraud unless there is a duty to speak." (citation modified)). Moreover, the trial court concluded that "[g]iven the evidence that the parties agreed to submit at least a portion of their dispute to Judge Levie and JAMS as early as November 19, 2019," and deferring to those factual findings, *Bank of Am., N.A.*, 80 A.3d at 667, we too see nothing fraudulent in a push by WTP to include a similar clause in the final ACAF. Accordingly, we conclude that QRG has failed to meet its burden of proving its claim of fraudulent inducement.

## 2. Duress

QRG next argues that they were under duress when they agreed to the ACAF's arbitration clause. "Duress is any wrongful threat of one person by words or other conduct that induces another to enter a transaction under the influence of such fear as precludes him from exercising free will and judgment[.]" *Dyer v. Bilaal*, 983 A.2d 349, 360 (D.C. 2009) (citation modified). This court determines whether the ACAF's arbitration clause was executed under duress by examining whether there was proof of "(1) an improper threat and (2) the lack of a reasonable alternative." *Osborne v. Howard Univ. Physicians, Inc.*, 904 A.2d 335, 339 (D.C. 2006).

Our jurisdiction has adopted the Second Restatement of Contracts regarding what constitutes an improper threat for purposes of establishing duress, which provides that:

> A threat is improper if: (a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property, (b) what is threatened is a criminal prosecution, (c) what is threatened is the use of civil process and the threat is made in bad faith, or (d) the threat is a breach of the duty of good faith and fair dealing under a contract with a recipient.

*Id.* (quoting Restatement (Second) of Contracts, § 176(1) (1981)).

Here, the trial court concluded that QRG failed to establish any improper threat based on the comment of Mr. Foster of PLG because it was consistent with the history of the parties' often aggressive communications during their negotiations. QRG's contrary view that the emails' "context did not make the threat any less threatening" is not a basis for us to reject the trial court's factual findings. Further still, it was not improper for WTP to demand the inclusion of an arbitration clause and to threaten to withhold signing the ACAF or to demand a greater share of the contingency fee if QRG did not agree. WTP's threat was not criminal or tortious in nature, but rather an "uncertain and consequential" economic threat, which we have held does not constitute duress as a matter of law. *See Sind v. Pollin*, 356 A.2d 653, 657 (D.C. 1976).

The trial court also determined that there was no special relationship between the Law Firms that placed QRG in a position of bargaining vulnerability. Any inference of QRG's lack of bargaining power is undermined by all of the signatories to the ACAF acting through their sophisticated lawyers. Further, QRG had significant control and sway over Wye Oak as its long-time counsel. In fact, Mr. Quinn, one of QRG's attorneys, was a Wye Oak board member who was able to convince Wye Oak not to honor the ACAF. It is not plausible that WTP's speculative economic threat caused QRG to experience sufficient fear to preclude QRG from exercising free will and judgment. We discern no error in the trial court's

determination that there was no impropriety in WTP expressing its intent to seek thirty percent of the contingency-fee award, in light of the arbitrator ultimately awarding WTP twenty-seven-point-five percent of the contingency fee after considering evidence of WTP's role in the Iraq Litigation. Accordingly, we affirm the trial court's conclusion that WTP's "threats" were not improper.

Our conclusion that QRG has failed to show an improper threat, one of the requisite elements for duress, is a sufficient basis to affirm the trial court's ruling rejecting QRG's claim that there was no agreement to arbitrate under Section 16-4423(a)(5) because QRG's assent was procured under duress.

## B. The Scope of the ACAF's Arbitration Clause

We now consider QRG's arguments regarding the scope of the arbitration clause.[11] The parties dispute whether any deference is owed to the arbitrator's conclusion as to the ACAF's arbitration clause's scope and whether the court

---

[11] QRG additionally argues that we should decide the applicability of JAMS Rule 8(b), which provides that jurisdictional and arbitrability disputes shall be ruled on by the arbitrator. As explained in this section, however, we agree with the trial court's conclusion that the arbitrator correctly determined that the scope of jurisdiction afforded by the arbitration clause in the ACAF covered both the Law Firms' contingency fee dispute and PLG's and WTP's tort claims. Accordingly, we regard the ACAF's reference to JAMS Rule 8(b) as consistent with our ultimate conclusion that the trial court correctly decided that the arbitrator acted within the scope of the ACAF's arbitration clause.

correctly ruled that the ACAF's arbitration clause encompassed both the Law Firms' contingency fee dispute and PLG's and WTP's tort claims.

First, QRG argues that this court owes no deference to the arbitrator's conclusion regarding arbitrability. In support, QRG correctly points out that contract interpretation is "a legal question this court reviews de novo," *Unit Owners Ass'n of 2337 Champlain St. Condo. v. 2337 Champlain St., LLC*, 314 A.3d 1198, 1211 (D.C. 2024), and asserts that we should apply traditional de novo review. On the other hand, appellees argue that our standard of review is highly deferential.

Our precedents provide that the standard of review of "whether a particular dispute is arbitrable" is de novo. *Woodroof v. Cunningham*, 147 A.3d 777, 787-88 (D.C. 2016). "When making this determination," we have clarified that "the court must inquire merely whether the arbitration clause is susceptible of an interpretation that covers the dispute." *Id.* (citation modified). "If the clause possesses a certain amount of ambiguity, a presumption nevertheless applies to construe any ambiguity in favor of arbitration." *Id.* (citation modified). Here, while the parties both argue that the arbitration clause is unambiguous, each presents a different view of its meaning, and so we must consider whether the Superior Court correctly confirmed the arbitrator's conclusion that the arbitration clause was susceptible to an interpretation that covers both the parties' fee allocation dispute and WTP's and

PLG's tort claims against QRG. *See Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013) ("Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." (citation modified)).

According to QRG, the arbitrator lacked jurisdiction over the fee allocation dispute and WTP's and PLG's tort claims and therefore we must reverse the court's determination that the arbitrator acted in accordance with D.C. Code § 16-4423(4). QRG asserts that the fee agreements and WTP's and PLG's tort claims predated the ACAF, and so the ACAF cannot plainly apply to them. We disagree and conclude that the arbitrator correctly decided that the plain language of the ACAF's arbitration clause applied to the parties' contingency fee dispute and PLG's and WTP's related tort claims.

"Generally, in deciding whether the parties agreed to arbitration, the courts apply ordinary state-law contract principles." *Bank of Am., N.A.*, 80 A.3d at 663. As we have explained:

> This jurisdiction adheres to an "objective" law of contracts, meaning the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.

*Dyer*, 983 A.2d at 354-55 (quoting *DSP Venture Grp.*, *Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003) (alteration in original)). Interpreting the ACAF's arbitration clause's written language requires that "we examine the document on its face, giving the language used its plain meaning." *Id.* at 355. "Plain meaning is usually ascertained by considering applicable canons of construction, including ordinary meaning[.]" *In re Wilde*, 68 A.3d 749, 758 n.13 (D.C. 2013) (citation modified). We may consult dictionaries to ascertain the ordinary meaning of words. *See, e.g.*, *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (looking "to dictionary definitions to determine the ordinary meaning").

Here, the arbitration clause is set forth in paragraph three of the ACAF and states that "any claim or dispute between any of [the Law Firms] arising out of or relating to [the ACAF], the services to be performed under it, including any fee owed to any party, will be resolved by arbitration in the District of Columbia." QRG can only establish that the arbitrator lacked jurisdiction if the plain language "arising out of or relating to" is not susceptible to an interpretation that covers the Law Firms' fee allocation dispute and PLG's and WTP's tort claims.

"Arising" means "to begin to occur or to exist: to come into being or to attention."[12] "Out of" means "from."[13] Also, "relating to" means "as in applying (to)" or "connected with something."[14] *See also Bank of America*, 80 A.3d at 681 (explaining that "the definition of 'related to' is simply 'associated with' or 'connected to,'" and that "there must be some nexus between" the terms in order for them to be related to each other). Accordingly, the plain meaning of the ACAF's arbitration clause is that the parties must arbitrate any and all issues that come into being or to attention from the ACAF or those issues connected with the ACAF's application.

Applied here, these definitions show that the arbitration clause set forth in paragraph three of the ACAF is susceptible to an interpretation that covers the allocation of the contingency fees between the Law Firms as well as WTP's and PLG's tort claims. The provision in paragraph one of the ACAF stating that "the services to be performed under [the ACAF], including any fee owed to any party" covers the Law Firms' respective shares of the total amount that Wye Oak set aside

---

[12] *Arise*, *Verb*, Merriam-Webster, https://perma.cc/GAQ7-HTFK, (last visited July 29, 2026).

[13] *Out of*, *Preposition*, Merriam-Webster, https://perma.cc/7N33-WM3L, (last visited July 29, 2026).

[14] *Meaning of Relating To In English*, Cambridge Dictionary, https://perma.cc/MZJ8-9NGQ, (last visited July 29, 2026).

from its judgment in the Iraq Litigation. Indeed, in that same paragraph of the ACAF, Wye Oak promised to cover "all costs and expenses reasonably incurred by the Law Firms" from the "total contingency fee of 46 percent." The conclusion that the plain language of the arbitration clause's scope is susceptible to covering the fee allocation dispute is further supported by the ACAF's recognition that "the existing fee agreements, as contemplated by the parties, for the distribution of fees to compensate attorneys do not accurately or equitably reflect the contributions of time, expenses, and other resources" of the Law Firms on behalf of Wye Oak.

WTP's and PLG's breach of fiduciary duty claim that QRG failed to monetize the judgment in the Iraq Litigation in 2019 and timely pursue collection is similarly susceptible to being covered by the arbitration clause. First, under paragraph two of the ACAF, WTP and QRG expressly agreed to "cooperatively supervise the appellate advocacy and judgment collection efforts on behalf of Wye Oak." Any alleged failure of QRG regarding the judgment collection efforts under paragraph two of the ACAF is therefore covered as a claim regarding the "services to be performed under" the ACAF. Likewise, the ACAF's language regarding the "computation of that [contingency] fee" in paragraph one of the ACAF is susceptible to covering WTP's and PLG's tortious interference claim that QRG acted to undermine their contingency fee recovery. PLG and WTP allege that QRG worked against PLG by attempting to reduce PLG's percentage of the attorneys' fees. As

WTP's and PLG's allegations are grounded in provisions explicitly set forth in the ACAF, we agree with the trial court that the arbitrator properly decided that their tortious interference and breach of fiduciary duty claims were covered by the scope of the arbitration clause.

## C. Monetization of the Judgement

Following the Supreme Court's denial of Wye Oak's petition for a writ of certiorari to review the D.C. Circuit's opinion vacating the federal district court's judgment in favor of Wye Oak in the Iraq Litigation, *see Wye Oak Tech., Inc.*, 146 S. Ct. at 396, this division sua sponte ordered supplemental briefing on the impact, if any, of the Supreme Court's decision.

According to appellees' supplemental brief, "during the arbitration, a portion of the judgment was monetized, such that Wye Oak would achieve at least some recovery even if the judgment was reversed or vacated on appeal, and that the contingent fee applied to that source of recovery." QRG, however, argues in its supplemental briefing that the vacated judgment renders the ACAF void, because there is no longer any judgment to collect. Here, given that the record shows that the parties have both acknowledged that the judgment has been monetized in some form, we disagree with QRG's proposition and conclude that the amount of money flowing from the judgment that could be distributed as attorneys' fees is greater than zero.

### III.   Conclusion

For the foregoing reasons, we conclude that the trial court did not err in denying QRG's motion for vacatur of the arbitrator's final award and granting appellee Law Firms' motion to confirm the final award. The ACAF was not the product of fraudulent inducement and duress. Further, the arbitrator acted within the scope of his authority as set forth within the ACAF's arbitration clause, which covered the fee allocation dispute and PLG's and WTP's claims of tortious interference and breach of fiduciary duty. Finally, we conclude that the D.C. Circuit's decision vacating the federal district court's judgment in favor of Wye Oak did not render the ACAF void.

The judgment of the Superior Court confirming the arbitrator's final award is therefore affirmed.

*So ordered.*